IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DOMNICK BROOKS #428372
  #412-735                                               :

      Plaintiff                                     :

      v.                                            : CIVIL ACTION NO. CCB-14-2546

LIEUTENANT OWESEGUN AJOSE[1]             :
LIEUTENANT SHAWN IRVINE
LIEUTENANT ALVAREZ L. HOLEMAN,           :
  SR.
OFFICER ROBERT A. CARSON                 :
OFFICER ZANEL SANTANA
OFFICER DESHAWN BARRETT                  :

      Defendants

**MEMORANDUM**

      Pending is a motion to dismiss or, in the alternative, motion for summary judgment filed on behalf of six employees at Baltimore City Booking and Intake Center ("Central Booking"). (ECF No. 27). Plaintiff Domnick Brooks ("Brooks") was advised of his right to file an opposition response to the motion and of the consequences of failing to do so (ECF No. 28),[2] but has failed to oppose the motion. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, defendants' motion, construed as a motion for summary judgment, will be granted.

---

[1] The Clerk shall amend the docket to reflect the full and proper spelling of defendants' names.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk of Court on April 15, 2015 informed Brooks that defendants had filed a dispositive motion; that Brooks had seventeen days in which to file written opposition to the motion; and that if Brooks failed to respond, summary judgment could be entered against him without further notice. Brooks has chosen not to respond.

**Background**

Brooks, currently incarcerated at the North Branch Correctional Institution ("NBCI"), seeks compensatory and punitive damages against six correctional officers[3] pursuant to 42 U.S.C. § 1983. Brooks states that on May 14, 2014, he was at Central Booking to be processed on a "writ." (ECF No. 1 at p. 3). Brooks claims that a "verbal dispute" arose over Lt. Irvine's refusal to allow Brooks to make a phone call. (*Id.*). Brooks states he was "tossed" into a cell without the phone call and then refused to allow officers to remove his handcuffs until he "saw a captain." (*Id.*). Officer Santana entered the cell and placed Brooks in a choke hold until Brooks passed out. (*Id.* at p. 4). Brooks claims while he was unconscious, his handcuffs were removed from behind his back and placed in front. (*Id.*).

Brooks indicates he "popped the sprinkler" in his cell. All the defendants then "ran" into the cell and began to viciously punch, kick and beat him. (*Id.*). Brooks states he suffered injury to the face, head, ribs, and back, and lost "sight" because his glasses were broken. (*Id.* at p. 5). Brooks claims he received no medical attention for six hours. He later was taken to the University of Maryland emergency department, where he claims he was found to have sustained a "skull fracture, ear puncture, head injuries, eye damage, minor cuts/lacerations, bruised ribs, and [a] mild concussion." (*Id.*). He alleges that the excessive force used by the correctional officers violated his constitutional rights.

The correctional defendants have submitted declarations, records and video recordings[4] detailing a different version of the May 14, 2014 incident. Brooks was a Division of Correction ("DOC") prisoner who had been brought from NBCI to Central Booking to be fingerprinted and

---

[3] Brooks seeks damages against defendants in their official and individual capacities. (*Id.*).

[4] Brooks has been provided an opportunity to view the video evidence. (ECF No. 27, Ex. B, cover letter from counsel Laura Mullally to the court, dated April 14, 201[5]).

processed on an open charge.[5] (Declaration of Lt. Shawn Irvine, ECF No. 27-2, ¶ 2). Once inside Central Booking, Brooks stated "I want trouble. I am not going in (the cell)." (*Id.*, ¶ 3). Brooks physically resisted placement in the cell, kicked the door closed, and used his right leg to resist efforts to walk him into the cell. (Video, camera ENC02-2C51, booking corridor camera, 6:25 p.m., ECF No. 27, Ex. B). Brooks backed into his cell and refused to allow officers to remove his handcuffs, stating "Come take them off." (ECF No. 27-2, ¶ 3). Officers Santana, Barrett and Carson removed the handcuffs from Brooks and closed the cell door. (*Id.*, ¶ 4).

Minutes later, Irvine heard a loud bang and the entire booking floor began to flood. Brooks had broken the ceiling sprinkler in his cell, and water was flowing from beneath his cell door. Ajose and Holeman told Brooks to step outside the cell so the sprinkler could be shut off, and Brooks refused, cursing and threatening the officers. (*Id.*, ¶ 5). Ajose, Holeman, Santana, Carson and Barrett entered the cell. Brooks began swinging at the officers and was taken to the ground by the officers. (*Id.*, ¶¶ 6-7). Brooks bit Barrett on the right hand and Santana also sustained an injured hand during the incident. (*Id.*, ¶ 8).

Brooks was immediately taken to the medical area for a medical and psychiatric exam and later transported to the University of Maryland emergency department for evaluation of an injury to his right ear. (Id., ¶ 7). Brooks' eardrum was perforated and he had a bruise on the forehead. (*Id.*, ¶¶ 7, 9; ECF No. 27-4; ECF No. 27, Ex. B (Video, ENC10, Medical unit front)). Defendants indicate Brooks was not wearing glasses during the booking process. (ECF No. 27, Ex. B (Video, ENC 15, 6:25 p.m.)).

## Standard of Review

As noted, defendant has moved to dismiss or, in the alternative, for summary judgment. "'The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint.'"

---

[5] In the video, Brooks wore an orange DOC jumpsuit. He is seen wearing white long-johns after the flood.

*McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "'accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff.'" *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (citation omitted).

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

"There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 261 (4th

Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 712 F.3d at 281.

Brooks had adequate notice that defendants' motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260-61. Further, Brooks has not pointed to any additional evidence that exists that would be helpful to the disposition of this case and did not oppose the dispositive motion. He did have access, however, to the affidavits, record submissions, and the video, along with the other evidence presented in this case. Accordingly, defendants' motion shall be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Brook's claim of excessive use of force shall be examined in light of this standard of review.

## Analysis

Defendants move to dismiss Brooks' claim because Brooks has failed to exhaust administrative remedies. Because the incident was subject to investigation by the Internal Investigation Unit ("IIU") (ECF No. 27-5 at p. 1), the court assumes, without deciding, that the ARP process no longer was available, and Brooks therefore has exhausted his administrative remedies.[6] Thus, the merits of Brooks' excessive force claim shall be examined.[7]

In examining Brooks' allegation of excessive use of force, this court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 599 U.S. 34 (2010).

---

[6] The question whether some "special circumstances" excuse the exhaustion requirement under the PLRA is under review. *See Blake v. Ross,* 787 F3d 693, 694 (4th Cir. 2015), petition for cert. filed, 136 S.Ct. 614 (U.S. December 11, 2015) (No. 15-339).

[7] At the time of the incident Brooks, although serving a sentence on other charges, was a pretrial detainee. The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Force used may be excessive if it is inflicted "maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, -7 (1992).

In the instant case the reasons for the application of force – to place Brooks in a cell, to remove his handcuffs, and to remove him from his cell after he flooded it – pass constitutional muster. Further, defendants resolved the incident and sent Brooks to medical personnel where he received prompt treatment for his injuries. The uncontroverted evidence does not suggest that any force other than that necessary to achieve resolution of the incident was applied. Defendants' version of events is supported by declarations under oath and video evidence.

Brooks, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Brooks has failed to submit any evidence to support his claim, or to put the material fact of this claim-- the use of force against him--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). While the court may not determine credibility between the parties, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Haris*, 550 U.S. 372, 380 (2007). There is simply no evidence that any of the named defendants acted maliciously or sadistically to cause harm to Brooks. Brooks has failed to oppose defendants' dispositive motion and has presented no evidence to contradict defendants' declarations. Accordingly, a separate order granting the defendants' dispositive motion follows.[8]

January 28, 2016
Date

      /S/
Catherine C. Blake
United States District Judge

---

[8] Defendants' argument concerning the official capacity claims will not be addressed in light of this outcome.